# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| AXO STAFF LEASING, LLC,<br>*Plaintiff*<br><br>v.<br><br>ZURICH AMERICAN INSURANCE COMPANY, MCCREADIE & MCCREADIE, INC., LASSITER WARE INSURANCE,<br>*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. A-19-CV-00002-LY |

## ORDER

Before the Court are Defendant Zurich American Insurance Company's Opposed Motion to Compel Examination under Oath and to Abate Lawsuit, filed on April 15, 2019 (Dkt. No. 13); Plaintiff AXO Staff Leasing, LLC's Response, filed on April 22, 2019 (Dkt. No. 14); and Defendant Zurich's Reply, filed on April 26, 2019 (Dkt. No. 18). On August 30, 2019, the District Court referred the above motion and related filings to the undersigned Magistrate Judge for resolution pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas ("Local Rules").

### I.  General Background

This lawsuit is an insurance coverage dispute between insurer Zurich American Insurance Company ("Zurich") and named insured AXO Staff Leasing, LLC ("AXO"). AXO is a Texas limited liability company that was in the business of providing "temporary and permanent staffing for companies, processing payroll, withholding income taxes, and managing other similar human resources functions as requested" from 2010 through 2017. Dkt. No. 1-2 at ¶ 8. In October 2012, AXO purchased a commercial insurance policy from Zurich that included a Staffing Industry

1

Crime Coverage Policy providing coverage for "Your Employee's Dishonest Acts." *See* Exh. A to Dkt. No. 13 (hereinafter "the Policy") at § A.1(a). The Policy defined "Dishonest Act" to include "embezzlement" by an "employee." *Id.* at ¶ G.10. The Policy had a $5 million limit and was effective from October 26, 2012 through October 26, 2017. Dkt. No. 1-2 at ¶ 10.

On January 13, 2017, Mathew Marchant, the President of AXO, was notified by the Internal Revenue Service Criminal Investigation Division that AXO's Chief Financial Officer, John Herzer, was under criminal investigation. *See* Exh. B to Dkt. No. 1-2. The IRS notified Marchant that AXO had failed to file quarterly tax returns and pay payroll taxes from 2010 to 2017. *See* Dkt. No. 1-2 at ¶ 14. AXO alleges that after Marchant confronted Herzer regarding the IRS criminal investigation, Herzer confessed that "instead of paying over the taxes owed by AXO, he had embezzled the money for personal use." *Id.* at ¶ 15. AXO promptly terminated Herzer. Several months later, AXO went out of business. *Id.* at ¶ 19.[1]

AXO notified Zurich of the embezzlement on January 25, 2017. On May 12, 2017, AXO filed a Proof of Loss with Zurich, alleging that AXO "was the victim of its Chief Financial Officer's 'dishonest acts,' which resulted in at least $3.6 million in losses through embezzlement, and has become liable for at least $4.9 million in penalties and interest for the CFO's willful non-payment of payroll taxes (and the underlying tax, at least $9.7 million, remains unpaid)." *See* Exh. E to Dkt. No.1-2 at p. 1. AXO also notified Zurich that "[i]t may also be necessary for AXO Group LLC to supplement this claim for loss because of the still-developing nature of the IRS investigation and assessment of penalties and interest." *Id.*

---

[1] Herzer eventually pled guilty in the Western District of Texas to Failure to Account for and Pay Over Withholding and F.I.C.A. (Social Security) Taxes, in violation of 26 U.S.C. § 7202. *See United States v. Herzer*, A-18-CR-348-LY (W.D. Tex. Oct. 3, 2018). On January 4, 2019, the District Court sentenced Herzer to 48 months imprisonment, a three-year term of supervised release, and a $6,445,284 order or restitution. *See* Dkt. No. 21 in A-18-CR-348-LY.

On August 23, 2017, through its attorney, Zurich sent AXO a Reservation of Rights letter summarizing the terms of the Policy and raising questions as to whether Herzer was an "Employee" as defined in the Policy. *See* Exh. F to Dkt. No. 1-2 at p. 6. Zurich noted that the Policy "expressly provides that 'Employee' does not include:

> (i) any broker, factor, commission merchant, consignee, contractor or other agent or representative of the same general character, or
>
> (ii) any natural person who is authorized by you to sign your checks or make withdrawals from your bank accounts without the countersignature of another natural person similarly authorized by you. This does not apply to any natural person described under paragraph **11.c.** above."

*Id.* (quoting the Policy at § 11). Zurich asked AXO to clarify whether Herzer "was in fact authorized to sign AXO's checks or make withdrawals from its bank accounts without the countersignature of another natural person similarly authorized by AXO." *Id.* at p. 7. In addition, Zurich formally requested the following:

> **V. REQUEST FOR EXAMINATION UNDER OATH:** Under the circumstances, Zurich requests an examination under oath of AXO, by and through Mr. Marchant, as provided for in the Policy. Please let us know a date, time and location for the examination that is convenient for you and Mr. Marchant. In that regard, Zurich would appreciate it if in advance of the examination you would provide me with documents relating to the issue of whether Mr. Herzer was authorized to sign AXO's checks or make withdrawals from its bank accounts without the countersignature of another natural person similarly authorized by AXO. This would include the account agreements with AXO's banks and related signature cards. Also, please send me the application(s) that AXO submitted to obtain the Policy. In addition, if AXO intends to supplement its Proof of Loss, Zurich asks that AXO do so prior to the examination under oath.

*Id.* at p. 9.

On February 15, 2018, AXO responded to the Reservation of Rights Letter disputing the coverage issues and contending that Herzer met the definition of employee under section 11.c of the Policy, which defines an employee as:

> Any natural person who is your director, officer, manager or trustee while such person is engaged in handling "funds" or "other property" of any "employee benefits plan" owned, controlled or operated by you, or any natural person who is a director, officer, manager, employee or trustee of an "employee benefits plan", provided the "employee benefits plan" is listed as a Named Insured under this Coverage Form.

The Policy at 11.c. AXO also informed Zurich that its forensic accountants were still working to reconstruct AXO's bookkeeping records into a reconciled accurate form. Dkt. No. 1-2 at ¶ 24.

On May 14, 2018, AXO informed Zurich in a letter that it had completed its forensic accounting and delivered its report to Zurich contending that Herzer embezzled $4,730,702 from AXO. *Id.* at ¶ 25. AXO further suggested that "it would be an appropriate time to begin discussing the sworn examination of Matthew Marchant." Exh. G to Dkt. No. 1-2.

On July 2, 2018, Zurich's attorney responded to AXO's letter stating that "Zurich would like to proceed with the examination under oath, but only after all of the following have been accomplished:"

> 1. Matthew Curtis and RGL Forensics have concluded their work in this matter and issued their report to Zurich.[2]
>
> 2. On behalf of AXO, you have provided me with the documents relating to the issue of whether Mr. Herzer was authorized to sign AXO's checks or make withdrawals from its bank accounts without the countersignature of another natural person similarly authorized by AXO. In this regard, I note that in the Memorandum regarding the interview with Mr. Herzer that occurred on February 17, 2017, Gary Ploetz states that AXO "went through a succession of bank accounts" while Mr. Herzer worked for AXO. AXO will need to

---

[2] Matthew Curtis of RGL Forensics is Zurich's forensic accountant.

4

> provide copies of the account opening documents, account agreements, and signature cards for these accounts.
>
> 3. On behalf of AXO, you have also provided me AXO's documents evidencing the draws paid to Mr. Marchant and to Mr. Herzer between 2009 and 2016, including any documents reflecting approval of these draws and how they were recorded on the company's books and records.
>
> 4. AXO has amended or supplemented its Proof of Loss to update its claimed losses.

Exh. H to Dkt No. 1-2 at p. 2.

On August 28, 2018, AXO responded to the letter and provided Zurich with the Amended Proof of Loss, but failed to fully comply with all of Zurich's requests, stating the following:

> After receipt of your letter, our client requested copies of the account opening documents from the banks where AXO held accounts. Enclosed with this letter are the signature cards we received from First Lockhart National Bank. Of the fourteen requests our client made, First Lockhart was the only one who provided documents. Before we spend more time and money pursuing these documents, we ask that you provide us with some clarity as to why you need them prior to a sworn examination.
>
> You also requested AXO's documents evidencing the draws paid to Mr. Marchant and Mr. Herzer between 2009 and 2016. Enclosed please find AXO's accounting records for these draws. Concerning your request for documents reflecting approval of these draws, AXO did not maintain written records for the approvals for Mr. Marchant. No documents exist for the approval of Mr. Herzer's draws because they were unauthorized.

Exh. I to Dkt. No. 1-2.

AXO contends that "Zurich did not respond to the August 28, 2018, letter and has not made any further efforts to obtain Matthew Marchant's sworn examination and has wholly and completely refused to issue a coverage opinion." Dkt. No. 1-2 at ¶ 27.

On November 30, 2018, AXO filed this lawsuit in state court against Zurich, alleging breach of contract, unfair settlement practices, and a violation of the Texas DTPA. *See AXO v. Zurich*

*American Ins. Co.*, D-1-GN-18-007156 (353rd Dist. Ct. Travis County, Tex. Nov. 20, 2018). AXO's lawsuit also alleged a common law negligence claim against its insurance agents McCreadie and McCreadie, Inc. d/b/a American PEO Insurers and Lassiter Ware Insurance. On January 2, 2019, Zurich removed this case to federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

On April 15, 2019, Zurich filed the instant Motion to Compel Examination under Oath and Abate this Lawsuit, arguing that AXO failed to comply with the conditions precedent contained in the Policy before filing suit. "AXO has refused to produce for Zurich's examination all pertinent records and submit to an examination under oath, conditions precedent to the filing of suit against Zurich." Dkt. No. 13 at p.1. Zurich argues that this Court should abate this lawsuit until thirty days "after AXO provides the information Zurich needs to complete its investigation, including all documents and examinations under oath Zurich reasonably deems necessary." *Id.*

## II. Legal Standards

"While a motion to abate is not expressly authorized by federal statute or rule, federal courts have authority to entertain such preliminary motions." *Total Rx Care, LLC v. Great N. Ins. Co.*, 2017 WL 1365790, at *2 (N.D. Tex. Apr. 14, 2017) (quoting *PJC Bros., LLC v. S&S Claims Servs., Inc.*, 267 F.R.D. 199, 200 n.2 (S.D. Tex. 2010) (internal quotations omitted)). In addition, the decision to abate an action is "largely a matter of judicial discretion, which must be exercised in light of the policy against unnecessary dilatory motions." *Id.* (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1360 (3d ed. 2004)). The party seeking abatement has the burden of proof. *Cooper v. Metro. Lloyds Ins. Co. of Texas*, 2018 WL 620206, at *3 (N.D. Tex. Jan. 30, 2018).

In a diversity action, federal courts are bound to apply the forum state's substantive law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Accordingly, the Court must apply Texas law in this

case. "Texas law provides that insurance policies are construed according to common principles governing the construction of contracts, and the interpretation of an insurance policy is a question of law for a court to determine." *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel L.L.C.*, 620 F.3d 558, 562 (5th Cir. 2010). Under Texas law, "[i]nsurance policy interpretation principles emphasize a policy's plain language in determining its intended coverage." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 131 (Tex. 2010). Courts first "look at the language of the policy because we presume parties intend what the words of their contract say." *Id.* at 126. "The parties' intent is governed by what they said in the insurance contract, not by what one side or the other alleges they intended to say but did not." *Id.* at 127; *see also Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006). "The policy's terms are given their ordinary and generally-accepted meaning unless the policy shows the words were meant in a technical or different sense." *Gilbert*, 327 S.W.3d at 126. "For more than a century," the Supreme Court of Texas "has held that in construing insurance policies 'where the language is plain and unambiguous, courts must enforce the contract as made by the parties, and cannot make a new contract for them, nor change that which they have made under the guise of construction.'" *Fiess*, 202 S.W.3d at 753 (quoting *E. Tex. Fire Ins. Co. v. Kempner*, 87 Tex. 229, 27 S.W. 122, 122 (1894)).

### III. Analysis

Zurich argues that AXO has failed to comply with the conditions precedent contained in the Policy before filing this insurance coverage lawsuit by failing to (1) submit to an examination under oath ("EUO"), and (2) provide Zurich with all "pertinent records" before filing this lawsuit. Dkt. No. 13 at p. 1. In particular, Zurich complains that "AXO has refused to provide information regarding whether Mr. Herzer had authority to sign checks or make withdrawals without the

7

countersignature of another person similarly authorized by AXO – a key element in determining whether Mr. Herzer was an 'employee' of AXO, as defined by the Policy." *Id.* at p. 2-3.

Zurich also argues that AXO has failed to provide documentation showing ownership of the deposit, credit card, and other accounts to which allegedly unauthorized transfers were made. Accordingly, Zurich argues that it has been unable to verify that the transactions identified by AXO as fraudulent were made to accounts not owned by or otherwise affiliated with AXO. In addition, Zurich contends that AXO has not provided any documentation that allows Zurich to determine whether the transactions forming the basis of AXO's claim were for a legitimate business purpose or were actually unauthorized. Accordingly, Zurich argues that this lawsuit should be abated until AXO submits to an EUO and produces all pertinent records.

In response, AXO argues that the Motion to Abate should be denied because "Zurich has not presented the Court with evidence that it requested an EUO and AXO refused." Dkt. No. 14 at p. 7. AXO contends that Zurich "never unconditionally requested the EUO from Zurich." *Id.* In addition, AXO argues the Federal Rules of Civil Procedure should apply in this case, not state rules of abatement.

**A. The Policy's Provisions at Issue**

The Policy provides the following "Duties In The Event of Loss" clause ("Cooperation Clause"):

> Upon knowledge or "discovery" of loss or of an "occurrence" which may result in a claim for loss, you must:
>
> a. Notify us or our authorized representatives as soon as possible, but not later than 30 days from the date of such knowledge or "discovery." Except under Insuring Agreements 1.a. through 1.e., 5. and 6., you must also notify the local law enforcement authorities if the loss involves a violation of law;
>
> b. Give us a detailed, sworn proof of loss within four months after the "discovery" of loss;

> c. Submit to examination, under oath at our request and give us a signed statement of your answers;
>
> d. Produce for our examination all pertinent records, and
>
> e. Cooperate with us in all matters pertaining to the loss or claim.

The Policy, Dkt. No. 13-1 at § F.6.

The Policy further contains a "Legal Action Against Us" clause that provides that the insured "may not bring any legal action against us involving loss unless you have complied with all the terms of this insurance." *Id.* at § F.7.

## B. Did AXO fail to comply with the Cooperation Clause?

The Court finds that AXO has failed to comply with the terms of the Cooperation Clause because it did not submit to an EUO "and give [Zurich] a signed statement of [AXO's] answers" as required by the Policy. *Id.* at § F.6.c.

"It is well established under Texas law that cooperation clauses and "[i]nsurance policy provisions requiring an insured to submit to an examination under oath as conditions precedent to sustaining a suit on the policy are valid.'" *Cooper*, 2018 WL 620206, at *3 (quoting *In re Cypress Texas Lloyds*, 2011 WL 3631970, *9 (Tex. App. – Corpus Christi Aug. 15, 2011)); *see also Brown v. State Farm Lloyds*, 2012 WL 1077668, at *3 (S.D. Tex. Mar. 29, 2012) (collecting cases). "Likewise, where, as here, the policy contains express language requiring the insured to furnish requested documents, an insurer 'is well within its right to enforce the conditions precedent to coverage [such as] requesting the production of certain documents'" *Brown*, 2012 WL 1077668, at *3 (internal citations omitted). In addition, "'Suit Against Us' clauses, also known as 'No Action' clauses, are also valid conditions precedent to liability under insurance policies." *Id.* (quoting *Harville v. Twin City Fire Ins. Co.*, 885 F.2d 276, 279 (5th Cir. 1989)). Courts have found such clauses "clear and unambiguous" in entitling the insurer to have the conditions precedent

9

followed before the insured is entitled to file suit under the Policy. *Cowan v. Sentry Ins. a Mut. Co.*, 2017 WL 3394185, at *3 (N.D. Tex. July 19, 2017), *report and recommendation adopted*, 2017 WL 3382658 (N.D. Tex. Aug. 4, 2017).

As detailed above, on August 23, 2017, 15 months before AXO filed this lawsuit, Zurich officially requested that Marchant submit to an EUO, and that he produce before the EUO "documents relating to the issue of whether Mr. Herzer was authorized to sign AXO's checks or make withdrawals from its bank accounts without the countersignature of another natural person similarly authorized by AXO." *See* Exh. F to Dkt. No. 1-2 at p. 9. On July 2, 2018, Zurich again asked Marchant to submit to an EUO, and again requested documents related to whether Herzer was authorized to sign AXO's checks or make withdrawals from its bank accounts without countersignature. Exh. H to Dkt. 1-2 at p. 2. The correspondence attached to the Petition shows that AXO and Zurich disputed what documents needed to be produced and that AXO ultimately failed to produce all of the requested documents. *See* Exh. I to Dkt. No. 1-2. In addition, the EUO was never taken in this case.

While AXO complains that Zurich failed to pursue the EUO after August 28, 2018, AXO does not dispute that Marchant never submitted to an EUO and failed to produce "for our examination all pertinent records" requested by Zurich before filing this lawsuit. The clear terms of the Cooperation Clause required AXO to submit to an EUO under oath and provide Zurich with a signed statement of answers before filing a lawsuit based on a loss under the Policy. The Policy at F.6, F.7. Because AXO failed to comply with the Cooperation Clause, it has failed to comply with the conditions precedent in the Policy before filing this lawsuit. *See Cooper*, 2018 WL 620206, at *4 (holding that plaintiff failed to comply with the conditions precedent in the insurance contract by not fully cooperating in the EUO and by failing to provide the requested documents).

"Where an insured fails to comply with a condition precedent requiring the insured to submit to an examination under oath, the remedy is abatement of the case." *Brown*, 2012 WL 1077668, at *3 (quoting *In re Cypress Texas Lloyds*, 2011 WL 3631970, at *9); *see also Nabors v. Am. Reliable Ins. Co.*, 2017 WL 2463277, at *3 (N.D. Tex. June 7, 2017) ("Under Texas law, an insured's failure to comply with a condition precedent constitutes grounds for abating the suit."); *Wofford v. Allstate Ins. Co.*, 2005 WL 755761, at *3 (N.D. Tex. Apr. 4, 2005) (abating case for failure to comply with conditions precedent where the plaintiff participated in, but did not complete, the examination under oath and failed to produce documents requested for investigation into his insurance claim); *James v. Prop. & Cas. Ins. Co. of Hartford*, 2011 WL 4067880, at *3 (S.D. Tex. Sept. 12, 2011) ("Abatement of the entire case pending appraisal is therefore appropriate and in the interest of the efficient and inexpensive administration of justice."); *In re Foremost Cty. Mut. Ins. Co.*, 172 S.W.3d 128, 134 (Tex. App. 2005, pet. denied) (holding that the proper remedy is abatement when the insured failed to submit to an EUO since it is a condition precedent to filing suit).

AXO argues that the Court should ignore its failure to comply with the conditions precedent in the Policy and deny abatement because the case is now in federal rather than state court and, therefore, federal discovery rules should apply. Federal courts have explicitly rejected such arguments, finding that "the proper remedy for failure to comply with conditions precedent is abatement of the case." *Cooper*, 2018 WL 620206, at *4 (rejecting plaintiff's argument that defendant could obtain the information it sought through discovery since abatement is the proper remedy); *Cowan*, 2017 WL 3394185, at *2 (finding that the plaintiff's argument that the prevailing party could seek relief through discovery failed because the proper remedy for failure to comply

with conditions precedent is abatement). Because AXO failed to comply with the Cooperation Clause in this case, the case must be abated.

### IV. Conclusion

Based on the foregoing, Zurich's Motion to Compel Examination Under Oath and to Abate the Lawsuit (Dkt. No. 13) is **GRANTED**. This lawsuit is **ABATED** until **30 days** after AXO Staff Leasing, LLC provides the information Zurich needs to complete its investigation, including all documents set forth in its Motion to Abate and the examination under oath of the corporate representative and/or persons with knowledge of the facts requested per the terms of the Policy. The Parties are **ORDERED** to file a Joint Status Report with the Court within **30 days** of the date of this Order informing the Court of the status of the completion of these requirements.[3]

**SIGNED** on September 16, 2019.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE

---

[3] The Court will issue a separate Order regarding the current stay of Response deadlines for the pending Motions for Summary Judgment.