# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **AXO STAFF LEASING, LLC,** <br> *Plaintiff* | § § § | |
| v. | § § | Case No.  A-19-CV-00002-LY |
| **ZURICH AMERICAN INSURANCE COMPANY, MCCREADIE & MCCREADIE, INC., and LASSITER WARE INSURANCE,** <br> *Defendants* | § § § § § § | |

## O R D E R

On June 19, 2020, the Court ordered Plaintiff AXO Staff Leasing, LLC, to show cause in writing why this action should not be dismissed for want of prosecution. Dkt. 78. The issue that has stymied progress in this case for more than a year is straightforward: AXO seeks coverage under an insurance policy it purchased from Defendant Zurich American Insurance Company (the "Policy"), but has failed to provide documents sufficient for the Examination Under Oath ("EUO") of AXO's corporate representative necessary for Zurich to issue a coverage determination. *See* Policy at § F.6, Dkt. 13-1 at 11-12; Court Order of September 16, 2019, Dkt. 31.

AXO, the now-defunct named insured, contends that its former Chief Financial Officer, John Herzer, embezzled more than $4.7 million from it. It is AXO's contractual obligation to establish the value of its loss and that its claim is covered by the insurance agreement. Dkt. 67 at 3. The Court has found that documents necessary for the EUO include those (1) establishing AXO's loss and (2) showing that Herzer qualified as an employee under the Policy, which excludes persons "authorized by [AXO] to sign your checks or make withdrawals from your bank accounts without the countersignature of another natural person similarly authorized by you." Policy at § G.11(ii), Dkt. 13-1 at 16; *see also* Dkt. 78 at 1-2.

1

With respect to subject (2), AXO stipulated on July 10, 2020, that Herzer "was authorized to sign checks and withdraw funds and charge on company credit cards without countersignature of another natural person similarly authorized by AXO." Dkt. 85 at 3 ¶ 10. Pursuant to this stipulation, Herzer could not be considered an "employee" under the Policy. Therefore, the Court finds that documents pertaining to whether Herzer qualified as an employee as defined in the Policy are no longer necessary for the purpose of permitting the EUO to proceed.

AXO's stipulation does not satisfy subject (1), its obligation to establish the value of its loss.[1] It appears that the only remaining category of documents necessary for the EUO to occur are those "sufficient to show that the deposit accounts to which Herzer allegedly made unauthorized transfers were not owned by or otherwise affiliated with AXO." Dkt. 67 at 4; *see also* Dkt. 88 at 3 ("Zurich's investigation necessarily includes determining where the funds were transferred, by whom they were transferred, and determining whether the purportedly-fraudulent transfers were, in fact, authorized or whether the transfers were for a legitimate business purpose"). To that end, AXO issued subpoenas to ten financial institutions on June 30, 2020, and submitted returns of service dated July 14 through July 30, 2020. *See, e.g.*, Dkts. 81, 90-92.

Zurich contends that AXO has failed not only to issue subpoenas to all necessary financial institutions, but also to include information necessary for compliance with the subpoenas, arguing that "the subpoenas to those cherry-picked financial institutions appear doomed for failure because AXO failed to provide sufficient identifying information." Dkt. 88 at 2; *see also* Dkt. 84 at 2, 5. Although Zurich's prediction may prove true, the Court hereby grants AXO's request to "allow the passage of time legally required for responses to the notices and subpoenas that are presently being processed." Dkt. 85 at 6.

---

[1] Documents establishing the amount of its loss are not "unrelated to AXO's claims," as AXO argues. Dkt. 81 at 5.

**IT IS THEREFORE ORDERED** that Zurich shall either (1) inform the Court by **October 16, 2020**, that AXO has failed to produce the **minimum** sufficient documents concerning the value of its loss for a meaningful EUO to proceed, or (2) complete the EUO by **November 20, 2020**.

Should the EUO proceed, the parties are **ORDERED** to submit a **joint** status report advising the Court when the EUO has been completed.

To be clear, the protracted abatement of this case to comply with a condition precedent is due to AXO's actions alone. Abatement cannot last indefinitely.

> We note that abatement to comply with a condition precedent does not permit a matter to linger on the docket forever. To the contrary, "it is well-settled law that, if a trial court discovers that the plaintiff has failed to correct a defect or impediment to suit after an abatement has been granted, the trial court may properly dismiss the plaintiff's case."

*Shafighi v. Tex. Farmers Ins. Co.*, No. 14-12-00082-CV, 2013 WL 1803609, at *3 n.3 (Tex. App.—Houston [14th Dist.] Apr. 30, 2013, no pet.) (quoting *3V, Inc. v. JTS Enters., Inc.*, 40 S.W.3d 533, 540 (Tex. App.—Houston [14th Dist.] 2000, no pet.)). AXO's continued failure to produce necessary documents as ordered will result in a recommendation by the undersigned that this action be dismissed for want of prosecution.

**SIGNED** on August 4, 2020.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE